JON M. SANDS
Federal Public Defender
District of Arizona
850 W. Adams, Suite 201
Phoenix, Arizona  85007
Telephone: 602-382-2700

GERALD A. WILLIAMS, State Bar #013115
Asst. Federal Public Defender
Attorney for Defendant
gerald_williams@fd.org

# IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>         Plaintiff,<br><br>   vs.<br><br>Samuel Marian Mattia,<br><br>         Defendant. | No. CR-20-00664-001-PHX_DJH<br><br>**MOTION TO DISMISS<br>INDICTMENT** |

      The defendant, Samuel Marian Mattia, moves to dismiss the Indictment because it joins two offenses in a single count in violation of Federal Rule of Criminal Procedure 12(b)(3)(B)(i). Specifically, the single-count indictment charges Mr. Mattia with intent to harass and intimidate two separate victims, M.H. and J.H., by using an interactive computer service, electronic communication service, and facility of interstate and foreign commerce to engage in a course of conduct that caused and would reasonably be expected to cause, substantial emotional distress to M.H. and J.H., in violation of 18 U.S.C. Section 2261A(2)(B). As set forth below, the indictment is duplicitous and must be dismissed.

/ / /

/ / /

/ / /

## I.     Factual Background

In 2018, Mr. Mattia was in the custody of the Arizona Department of Corrections (ADOC).  While in custody, he became aware of a plot to assassinate United States Congresswoman Kyrsten Sinema. Mr. Mattia contacted the Phoenix F.B.I. and informed the office of the plot.  In October 2018, Special Agent Nicholas Grumbos and one of the alleged victims, M.H. (who was an F.B.I agent at the time), contacted Mr. Mattia to investigate the assassination plot.  They also asked Mr. Mattia if he was interested in helping the F.B.I. with ongoing investigations within ADOC.  M.H. gave Mr. Mattia her personal phone number and instructed him to call her when he got out of custody.

Mr. Mattia was released from ADOC on November 18, 2018. Shortly after his release, he contacted M.H., and told her that his probation office directed him to stay in a halfway house.  M.H. told Mr. Mattia to stay at his father's house and that she would contact Maricopa County Probation to inform them of the change in residence.

In early December of 2018, Mr. Mattia informed that an inmate in ADOC asked him to murder M.H.  On or about December 12, 2018, Mr. Mattia met with Agent Grumbos and M.H.  He provided them with information about a plot to take a librarian hostage at the Arizona State Prison Complex in Buckeye, Arizona.   The plot also involved assassinating M.H. if she responded to the kidnapping.  On December 22, 2018, shortly after M.H. became aware of the plot, she and Mr. Mattia began a romantic relationship.

On December 26, 2018, M.H., her husband J.H. (the other alleged victim) and their daughters drove to Colorado to visit her sister for the New Year's holiday.  While in route, M.H. learned that an inmate had taken a librarian hostage as predicted by Mr. Mattia.  When M.H. and her family returned from Colorado,

she moved out of the home and began spending more time with the defendant. M.H. provided Mr. Mattia with money, clothes, a telephone, and other gifts during that time.  Mr. Mattia recorded some of their interactions on his phone.  On January 25, 2019, M.H. requested and was able to obtain an early termination of Mr. Mattia's community supervision.  Shortly after his supervision terminated, he signed as a confidential source with the F.B.I.

On February 28, 2018, F.B.I. Agent Wicevich became involved in the investigation of the plot to assassinate M.H.  One week later, the F.B.I. removed M.H. as Mr. Mattia's handler.  On March 12, 2019, local new outlets reported that, as a result of misconduct by Maricopa County Deputies, the case against one of the ADOC inmates being investigated by the F.B.I was going to be dismissed.  On March 14, 2019, M.H. submitted her resignation to the F.B.I. On March 15, 2019, the F.B.I. informed the Goodyear Police Department, where J.H. was Deputy Chief, of M.H.'s resignation.

Mr. Mattia became increasingly uncomfortable with the type of activities the new F.B.I. handler wanted him to engage in, and he asked for a written assurance that he was not subject to criminal liability. When the F.B.I. declined to provide such assurances, he refused to continue his cooperation.

By the end of March, the relationship between Mattia and M.H. was strained.  He had developed a relationship with his current girlfriend and was not spending as much time with M.H. as she wanted.  On March 26, 2019, a friend and member of the Goodyear Police Department told J.H. that he had read a memo from the F.B.I. that M.H. was under investigation for an inappropriate relationship with an informant. J.H. confronted M.H. about the memo.  Initially, she lied about the relationship but eventually admitted it was true and that she had sent photos and videos of a sexual nature to the informant.

On April 3, 2019, M.H. asked to meet with Mr. Mattia.  Although she had resigned, she told her husband that she was going meet with a confidential informant regarding an assassination attempt against her.  She was able to hide her location from her husband by leaving her phone in the bathroom of a Circle K, which was located minutes away from Mr. Mattia's home.  When she met with Mr. Mattia, she was armed and frantic.  She began issuing threats, which ranged from shooting him to having him arrested for sexual assault.  He eventually convinced her to leave him at his house.

Unfortunately, the harassment did not stop.  M.H. continued to call Mr. Mattia and drive by his house, sometimes leaving personal items for him to find.  On about April 9, 2019, Mr. Mattia contacted J.H. and his sister-in-law via Facebook, with a message for them to stop M.H. from harassing him.  He also sent still shots of him and M.H. engaged in sexual and non-sexual acts to demonstrate that he was telling the truth.  On April 28, 2019, he sent a text message to Agent Grumbos, asking Agent Grumbos to stop M.H. from harassing him.  He sent similar photos of himself and M.H.  He also let the agent know that M.H. had provided him with personal information about his marriage. He hoped the photos and the information would convince Agent Grumbos he was being truthful about M.H.

## II.     The Indictment Must Be Dismissed Because It is Duplicitous.

An indictment is duplicitous if it "joins two or more distinct and separate offenses into a single count." *United States v. Mancuso*, 718 F.3d 780, 792 (9th Cir. 2013).  "A duplicitous indictment precludes assurance of jury unanimity, and may prejudice a subsequent double jeopardy defense." *United States v. Morse*, 785 F.2d 771, 774 (9th Cir. 1986).

The single-count indictment here is duplicitous because it charges two offenses—cyberstalking of M.H. and cyberstalking of J.H.—in one count. Specifically, the indictment alleges that:

> Between on or about April 9 and April 28, 2019, in Maricopa County, in the District of Arizona and elsewhere, the defendant Samuel Marian Mattia, with *the intent to harass and intimidate M.H. and J.H.,* used an interactive computer service, electronic communication service, and facility of interstate and foreign commerce to engage in a course of conduct *that caused, and would reasonably be expected to cause substantial emotional distress to M.H. and J.H.*

(Dkt # 22) (emphasis added).

The plain language of § 2261A(2)(B) shows that the indictment is defective. Section 2261A(2)(B) punishes someone who:

> With the intent to . . . harass or intimidate *another person* uses . . . any interactive computer service or electronic communication service . . . or any other facility of interstate or foreign commerce to engage in a course of conduct that—
>
> (B) causes or attempts to cause or would be reasonably expected to *cause substantial emotional distress to a person described in clause (i), (ii), or (iii) of paragraph (1)(A).*

18 U.S.C. § 2261A(2)(B) (emphasis added).  The individuals described in clauses (i) to (iii) of paragraph (1)(A) of Section 2261A include, in relevant part, the person who was directly harassed and the spouse or intimate partner of that person.

The crime of cyberstalking, then, is defined "in terms of [the defendant's] intent to strike fear in a particular individual." *United States v. Shrader*, 675 F.3d 300, 313 (4th Cir. 2012).  Moreover, "not only must the defendant possess the requisite intent towards a specific victim, but the statute also requires that his intimidating conduct actually induce fear in 'that person.'" *Id.* (quoting 18 U.S.C.

§ 2261A(2)).  Finally, the punishment imposed for committing the offense is based on the effect that the defendant's conduct has on the specific victim.  *Id.*

Given all of this, it is clear that a single count of cyberstalking in violation of 18 U.S.C. § 2261A(2)(B) can allege only one victim.  This was the conclusion of both *United States v. Shrader*, 675 F.3d 300 (4th Cir. 2012) and *United States v. Conlan*, 786 F.3d 380 (5th Cir. 2015).  In both of those cases, the defendants had been charged with multiple counts of cyberstalking, with each separate count alleging a separate victim.  *Shrader*, 675 F.3d at 312-13; *Conlan*, 786 F.3d at 386-87.  Both courts concluded that the defendants had been correctly charged because the "unit of prosecution" for § 2261A was a specific victim:  "the statute's terms unambiguously contemplate that the unit of prosecution is the targeted individual, requiring that the defendant act with intent towards a particular 'person,' that his actions produce the requisite effect in 'that person,' and defining punishment in terms of the effect on 'the victim.'"  *Shrader*, 675 F.3d at 313-14; *Conlan*, 786 F.3d at 387 (quoting *Shrader*, 675 F.3d at 313-14).

For all of these reasons, the indictment here is duplicitous and must be dismissed.  Because it charges two offenses in one count, a trial jury will not be able to unanimously determine whether the government can prove an intent to harass or intimidate J.H. and M.H. separate and independent of each other.  Similarly, the indictment does not separate any alleged harm that resulted to J.H. from that resulting to M.H.  More importantly, there is no way to determine whether the grand jury found probable cause (1) that Mr. Mattia intended to harass each alleged victim, and (2) that Mr. Mattia's conduct caused or  was reasonably expected to cause substantial emotional distress to each individual victim.

/ / /

/ / /

Therefore, the indictment should be dismissed pursuant Federal Rules of Criminal Procedure 12(b)(3)(B)(i).

Excludable delay under 18 U.S.C. § 3161(h)(7)(B)(i) and (iv) may result from this motion or from an order based thereon.

Respectfully submitted:  January 29, 2021.

JON M. SANDS
Federal Public Defender

 s/Gerald A. Williams
GERALD A. WILLIAMS
Asst. Federal Public Defender